IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL HORN,                    )
                                 )
            Plaintiff,           )
                                 )     No.  CV-06-486-HU
       v.                        )
                                 )
MICHAEL J. ASTRUE[1],            )
Commissioner of Social           )     FINDINGS & RECOMMENDATION
Security,                        )
                                 )
            Defendant.           )
                                 )

Tim Wilborn
WILBORN & ASSOCIATES, P.C.
2020-C SW 8th Avenue, PMB #294
West Linn, Oregon 97068

      Attorney for Plaintiff

Karin J. Immergut
UNITED STATES ATTORNEY
District of Oregon
Neil J. Evans
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

---

      [1]  On February 12, 2007, Michael J. Astrue became the
Commissioner of Social Security.  He is substituted as the
defendant in this action pursuant to Federal Rule of Civil
Procedure 25(d)(1) and 20 U.S.C. § 405(g).

1 - FINDINGS & RECOMMENDATION

Joanne E. Dantonio
SPECIAL ASSISTANT UNITED STATES ATTORNEY
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Michael Horn brings this action for judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction under 42 U.S.C. § 405(g).

Defendant concedes that the Administrative Law Judge (ALJ) who conducted the hearing on plaintiff's claim and issued an unfavorable decision, erred at step five of the sequential analysis. Accordingly, defendant concedes that plaintiff is entitled to a judgment in his favor.

Defendant and plaintiff dispute, however, whether the case should be remanded for additional evidence or for a determination of benefits. For the reasons explained below, I recommend that the case be remanded for additional evidence.

PROCEDURAL BACKGROUND

Plaintiff applied for DIB on May 3, 2000. Tr. 117-20. His application was denied initially and on reconsideration. Tr. 103-07, 108-12.

On May 14, 2002, plaintiff, represented by counsel, appeared for a hearing before an ALJ. Tr. 44-95. On July 26, 2002, the ALJ found plaintiff not disabled. Tr. 20-29. The Appeals Council denied plaintiff's request for review of the ALJ's decision. Tr. 7-10a.

Plaintiff filed an action in this Court, seeking review of the

2 - FINDINGS & RECOMMENDATION

ALJ's decision.  Based upon the stipulation of the parties, Judge King ordered the action remanded for further proceedings.  Tr. 393-94.   Upon receipt of Judge King's Order, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings consistent with Judge King's Order.  Tr. 397-400.

The ALJ conducted a second hearing on April 14, 2005.  Tr. 441-65.  Plaintiff again appeared with counsel  Id.  On January 25, 2006, the ALJ issued another unfavorable decision.  Tr. 363-76. Because the Appeals Council did not assume jurisdiction of the case, the ALJ's January 25, 2006 decision became the final decision of the Commissioner.  20 C.F.R. § 404.984.

STANDARD OF REVIEW & SEQUENTIAL EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   Disability claims are evaluated according to a five-step procedure.  Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).   The claimant bears the burden of proving disability.  Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not

3 - FINDINGS & RECOMMENDATION

1  disabled.

2      In step three, the Commissioner determines whether the
3  impairment meets or equals "one of a number of listed impairments
4  that the [Commissioner] acknowledges are so severe as to preclude
5  substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 141; <u>see</u> 20
6  C.F.R. §§ 404.1520(d), 416.920(d).   If so, the claimant is
7  conclusively presumed disabled; if not, the Commissioner proceeds
8  to step four. <u>Yuckert</u>, 482 U.S. at 141.

9      In step four the Commissioner determines whether the claimant
10  can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e),
11  416.920(e).  If the claimant can, he is not disabled.  If he cannot
12  perform past relevant work, the burden shifts to the Commissioner.
13  In step five, the Commissioner must establish that the claimant can
14  perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§
15  404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets its
16  burden and proves that the claimant is able to perform other work
17  which exists in the national economy, he is not disabled.   20
18  C.F.R. §§ 404.1566, 416.966.

19      The court may set aside the Commissioner's denial of benefits
20  only when the Commissioner's findings are based on legal error or
21  are not supported by substantial evidence in the record as a whole.
22  <u>Baxter</u>, 923 F.2d at 1394.  Substantial evidence means "more than a
23  mere scintilla," but "less than a preponderance." <u>Id.</u>  It means
24  such relevant evidence as a reasonable mind might accept as
25  adequate to support a conclusion. <u>Id.</u>

26                         DISCUSSION

27      Plaintiff alleges disability based on damage to the lumbar and
28  cervical regions of his spine.  Tr. 143.  He alleges an onset date

4 - FINDINGS & RECOMMENDATION

of July 30, 1999.  Tr. 117.  At the time of the second hearing in January 2005, plaintiff was fifty-two years old.  Id.  He completed high school and two years of college.  Tr. 149.  His past relevant work is as a truck driver.  Tr. 27, 80.

In his September 7, 2004 Order of Remand, Judge King stated:

> Upon remand to the Commissioner of Social Security, the Appeals Council will remand this case to the administrative law judge to (1) evaluate and explain the weight given the opinions of all treating and evaluating medical sources, including the physical capacities evaluations, in accordance with 20 C.F.R. § 404.1527, and Social Security Rulings (SSRs) 96-2p, 96-5p, and 96-6p; (2) properly evaluate all statements of lay witnesses; (3) properly evaluate Plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529, SSR 96-7p, and consistent with the holding in Dodrill v. Shalala, 12 F.3d 915 (9th Cir. 1993); (4) reevaluate Plaintiff's maximum residual functional capacity and provide appropriate rationale giving specific references to the evidence of record as required by 20 C.F.R. § 404.1545 and SSR 96-8p; and (5) obtain additional vocational expert testimony.  Plaintiff may present new arguments and further medical evidence of his limitations, if such evidence becomes available.

Tr. 393.

Upon receipt of Judge King's Order, the Appeals Council then entered its own Remand Order, which states, in pertinent part:

> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court.
>
> . . .
>
> Upon remand the Administrative Law Judge will:
>
> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve

1    any conflicts between the occupational evidence provided
2    by the vocational expert and information in the
     <u>Dictionary of Occupational Titles (DOT)</u> and its companion
3    publication, the <u>Selected Characteristics of Occupations</u>
     <u>(Social Security Ruling 00-4p)</u>.

4    Tr. 397-99.

5    Despite being specifically ordered to resolve any conflicts

6    between the occupational evidence provided by the vocational expert

7    and information in the DOT, the ALJ failed to do so.  As defendant

8    concedes in her memorandum in support of her motion to remand, the

9    ALJ erred at step five because, according to the DOT, the jobs

10   identified by the vocational expert as being suitable for

11   plaintiff, and relied on by the ALJ in concluding that plaintiff

12   could perform other jobs in the economy, all incorporated reaching

13   requirements that exceeded the reaching limits found by the ALJ.

14   <u>See</u> Deft's Mem. at p. 2.  Defendant argues, however, that remand

15   for further proceedings is the appropriate course because there are

16   outstanding issues in the case that need to be resolved before a

17   determination of disability can be made.  For the reasons explained

18   below, I agree with defendant.

19   Plaintiff raises six separate arguments in support of his

20   argument for reversal: (1) the ALJ relied on the vocational expert

21   testimony which conflicted with the DOT; (2) the ALJ failed to

22   consider a Veteran's Administration disability decision; (3) the

23   ALJ improperly assessed plaintiff's limitations at step two; (4)

24   the ALJ rejected the opinions of plaintiff's treating physicians;

25   (5) the ALJ improperly rejected plaintiff's allegations and

26   corroborating lay witness testimony; and (6) the ALJ posed an

27   incomplete hypothetical to the vocational expert.

28   Defendant's concession of error in regard to the conflict

between the vocational expert testimony and the DOT is not a basis, in and of itself, for a remand for benefits.    While the jobs identified by the vocational expert may have exceeded plaintiff's reaching capacity, the remaining evidence in the record does not establish disability and thus, a remand for additional vocational expert evidence is appropriate.

I address plaintiff's remaining arguments in turn.

I.  Plaintiff's Credibility

The ALJ concluded that to the extent plaintiff alleged limitations greater than what she determined was plaintiff's residual functional capacity (RFC), plaintiff's allegations were not credible.    Tr. 373.    The ALJ give two reasons for this conclusion: (1) the record showed a secondary gain motivation; and (2) plaintiff referred to activities that were inconsistent with his allegations of pain.    Tr. 373-74.

Although the ALJ is responsible for determining the claimant's credibility, "an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." Holohan v. Massinari, 246 F.3d 1195, 1208 (9th Cir. 2001).    Additionally, the ALJ must "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Id.  "The evidence upon which the ALJ relies must be substantial."

The first problem with the ALJ's rejection of plaintiff's credibility is her failure to specify which parts of plaintiff's testimony she rejected.    The ALJ's attempt here to limit the discredited testimony to limitations "greater" than her RFC does not meet the requirement that the ALJ "specifically identify" what testimony is rejected.    Additionally, the bases upon which she

rejected those "greater" limitations, are either unclear or not clear and convincing.

The ALJ cited three reasons in support of her conclusion that plaintiff was motivated by secondary gain. Tr. 373-74. She first stated that a May 31, 2002 physical capacity evaluation (PCE) performed by a physical and occupational therapist, "notes that the claimant['s] self-reports of limitation are inconsistent with demonstrated capacity, and the claimant at the PCE was also deconditioned, suggesting if he were in better condition the limits might have been further reduced." Tr. 373.

The PCE states that "[a]lthough Mr. Horn met the validity criteria for the Spinal Function Sort, his scores indicate he perceives himself as functioning below the SEDENTARY work level as defined as lifting 10# one-time an hour, or 10# or less once very 3 minutes. His perception does not match his level of participation demonstrated today." Tr. 347.

Putting aside the lack of explanation by the therapists or the ALJ of what is meant by "Spinal Function Sort," putting aside the evidence in the record that participation in the PCE caused plaintiff to be laid up for two days, Tr. 429, and putting aside the evidence that the PCE was limited to a two-hour evaluation only, the ALJ's reasoning is problematic because it is not necessarily probative of a secondary gain motivation.

In essence, the ALJ concludes that the PCE suggests that plaintiff exaggerated his limitations and if he did so at that time, he is exaggerating his symptoms now. But, while an ability to perform more demanding functions than claimed could be prompted by a secondary gain motivation, it is not necessarily so, and the

8 - FINDINGS & RECOMMENDATION

ALJ erred by failing to support her conclusion with an adequate discussion of the evidence in the record that would confirm that plaintiff's testimony was in fact motivated by secondary gain, rather than being attributable to some other cause. Furthermore, while the therapist noted plaintiff's deconditioning, the ALJ's statement that the demonstrated limits might be further reduced if he were in better condition, is complete speculation with no support in the record.

The second basis cited by the ALJ in support of her conclusion that plaintiff is motivated by secondary gain is a statement plaintiff made to both Dr. Derrick J. Sorweide, D.O., in late June 2000, and to Nurse Practitioner Marguerite Smith on July 26, 2000, to the effect that he did not want surgery or further rehabilitation, but instead, desired pain control and disability. Tr. 373-74 (citing Tr. 277, 301). But, an expressed desire to obtain disability benefits is not support for a finding of secondary gain. See Ratto v. Secretary, 839 F. Supp. 1415, 1428-29 (D. Or. 1993) (desire or expectation of obtaining benefits insufficient to discredit claimant's testimony).

Finally, the third basis for the ALJ's secondary gain finding is Smith's subsequent statement that plaintiff demonstrated "no motivation to improve his situation[.]" Tr. 374. What Smith actually said was that plaintiff "demonstrated no motivation to improve his situation through surgery or physical therapy." Tr. 294. The problem with relying on this statement to show secondary gain, however, is that a mere three paragraphs prior to this statement, Smith stated that plaintiff had been unable to obtain authorization for any physical therapy and was unable to pay for

9 - FINDINGS & RECOMMENDATION

such services.  Id.  If plaintiff is unable to afford physical
therapy, his lack of motivation to obtain it cannot be fairly
attributed to secondary gain.  See Smolen v. Chater, 80 F.3d 1273,
1284 (9th Cir. 1996) (claimant's symptom testimony could not be
rejected for failure to pursue treatment when evidence showed
claimant had no insurance and no ability to pay for treatment).
Similarly, the desire to avoid surgery is not substantial evidence
of a secondary gain motivation.

     As to the alleged inconsistencies between plaintiff's
limitations testimony and his testimony about his activities, the
ALJ stated that "[t]here are references to activities that are
inconsistent with his allegations of incapacitating back pain,
including riding and working on motorcycles."  Tr. 374.  She noted
that "[a]s recently as August 24, 2004, the claimant had reported
to Dr. Luther that he had recently had a ride back from Roseburg on
his motorcycle.'"  Id.

     The reference to working on his motorcycle is found in an
October 1, 2001 chart note by Dr. Andrew Luther, M.D., when
plaintiff complained about pain to his wrist which occurred when he
was helping a friend with a motorcycle by holding the handlebars
and a supporting strap slipped, causing his wrist to twist.  Tr.
324.  The reference to the motorcycle ride was in the context of a
urinary symptom complaint.  Tr. 423.  In discussing the complaint
further with Dr. Luther, plaintiff remarked that it started after
a ride back from Roseburg on his motorcycle.  Id.

     The problem with the ALJ's reliance on these examples is that
plaintiff has never claimed to have been completely incapacitated
from all activities despite his allegations of pain.  A more

10 - FINDINGS & RECOMMENDATION

careful examination of the record suggests that his level of activity is not inconsistent with his allegations of pain.

At his first hearing in May 2002, plaintiff testified that he had severe back pain, a neck sprain that gave him daily headaches, and numbness in his groin. Tr. 63. He took Vicodin two to three times per day and three to four Zanaflex tablets, which made the pain less sharp. Tr. 61-62. Even still, he was never completely pain free. Tr. 60. For his headaches, lying on the floor for twenty minutes helped ease the pain. Tr. 63.

Nonetheless, he testified that he walked one-half mile four times per week, even though it made his back hurt and sometimes caused a headache or numbness in his leg. Tr. 71-72. He could stand for twenty to thirty minutes, he could lift twenty to thirty pounds, and could perform some overhead reaching and pushing and pulling in moderation. Tr. 62-64, 71-72. He also did some limited household duties, although his sixteen-year old daughter performed the lion's share of those, and he read, did laundry, and surfed the Internet. Tr. 54. He was able to pull weeds for twenty to thirty minutes before the onset of back pain or spasms, to swim in the river in the summer, and play chess two to three times per month. Tr. 59-60.

Plaintiff did not further testify to his activities of daily living or his subjective pain limitations in the second hearing in April 2005. Tr. 441-65.

As the ALJ noted, plaintiff indicated that his back pain had impaired activities such as motorcycle riding and repair, but he did not state that he was entirely unable to perform them. See Tr. 368 (ALJ recognized that plaintiff indicated that activities such

11 - FINDINGS & RECOMMENDATION

1  as motorcycle riding and repair had been impaired by his back pain
2  but no indication he had stopped them entirely). Holding the
3  handlebars of a motorcycle which is already supported by some
4  independent means is not indicative of a level of activity
5  inconsistent with plaintiff's limitations testimony.

6       A single trip on a motorcycle is also, without more, not
7  inconsistent with plaintiff's testimony which generally indicates
8  that he can perform certain activities in moderation, on certain
9  days, and which sometimes cause increased pain, but that he cannot
10 sustain most of these activities for any significant length of
11 time. As the court noted in Reddick v. Chater, 157 F.3d 715, 722
12 (9th Cir. 1998), it is only when the claimant's level of activity
13 is inconsistent with the claimant's alleged limitations that the
14 activities may bear on the claimant's credibility. Here, because
15 the two isolated events cited by the ALJ are not inconsistent with
16 plaintiff's overall testimony, they are not a sufficient basis upon
17 which to reject plaintiff's limitations testimony. The ALJ erred
18 in this regard.

19 II. Assessment at Step II

20      At step two, the ALJ determines whether the claimant has a
21 "severe impairment" or "combination of impairments which
22 significantly limits [the claimant's] physical or mental ability to
23 do basic work activities[.]" 20 C.F.R. § 404.1520(c).

24      "An impairment or combination of impairments may be found not
25 severe only if the evidence establishes a slight abnormality that
26 has no more than a minimal effect on an individual's ability to
27 work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)
28 (internal quotation omitted). As explained in Webb, "[s]tep two .

12 - FINDINGS & RECOMMENDATION

1  . . is a de minimis screening device used to dispose of groundless

2  claims, . . . and an ALJ may find that a claimant lacks a medically

3  severe impairment or combination of impairments only when his

4  conclusion is clearly established by medical evidence." Id. at 687

5  (internal quotations, brackets, and citations omitted).

6       The ALJ provided the following step two analysis:

7            The medical evidence indicates that the claimant has a
             remote history of a back injury and has degenerative
8            changes in his spine from this injury, an impairment that
             is "severe" within the meaning of the Regulations but not
9            "severe" enough to meet or medically equal, either singly
             or in combination, one of the impairments listed in
10           Appendix 1, Subpart P, Regulations No. 4.

11  Tr. 367-68; see also Tr. 375 (finding that plaintiff has a history

12  of degenerative disk disease, a severe impairment).

13       The medical expert who testified at the second hearing, Dr.

14  David Williams, stated that plaintiff had "degenerative arthritis

15  and particularly degenerative disk disease in particularly the

16  lumbar area of L2 and 3, and at L3 and 4 with evidence of some

17  stenosis at L3 and 4." Tr. 451. He also stated that plaintiff had

18  "degenerative facet disease which effects the articulation between

19  joints and he has evidence of scoliosis[.]" Id.

20       I agree with plaintiff that the ALJ's discussion of

21  impairments at step two was inadequate. Just based on Dr.

22  Williams's testimony alone, the ALJ failed to distinguish between

23  plaintiff's degenerative arthritis and his degenerative disk

24  disease and more importantly, failed to discuss his degenerative

25  facet disease and his degenerative dextroscoliosis.

26       Additionally, the record indicates that plaintiff has a

27  deformity of the L3 vertebral body, foraminal stenosis, chronic

28  muscular cervical strain with probable cervical degenerative

13 - FINDINGS & RECOMMENDATION

stiffness, and a history of wrist injury with slight loss of motion.  Tr. 240, 250, 265.  Finally, the ALJ failed to note plaintiff's testimony regarding headaches.  It was error for the ALJ to fail to discuss any of these conditions in the context of her step two analysis.

III.  Rejection of Dr. Donnelly & Dr. Luther

A.  Dr. Donnelly

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. David Donnelly, M.D., one of plaintiff's physicians at the Veteran's Administration (VA).  In September 2001, Dr. Donnelly rendered an assessment of plaintiff's ability to perform certain work-related activities.  Tr. 232-35.  Notably, he opined that plaintiff could sit a total of three hours, stand a total of two hours, and walk a total of one hour, in an eight-hour workday.  Tr. 233.

In her first decision, the ALJ rejected Dr. Donnelly's opinion largely because in her interpretation, Dr. Donnelly's assessment did "not specifically include a consideration of the claimant's activities if allowed the flexibility to sit or stand at will." Tr. 25.  The Appeals Council's Remand Order not only vacated the ALJ's first decision, but specifically rejected this conclusion by the ALJ.  Tr. 397.

In her second decision, the ALJ again rejected Dr. Donnelly's opinion.  In support of her rejection, the ALJ initially noted that (1) Dr. Donnelly had mistakenly reported that plaintiff was not a candidate for surgery because of having had several previous surgeries; (2) plaintiff's subjective presentation of using a cane, exhibiting difficulty sitting in the interview, and informing Dr.

14 - FINDINGS & RECOMMENDATION

1  Donnelly that he needed to lie down a lot at home, were consistent
2  with plaintiff's secondary gain motivation; and (3) Dr. Donnelly
3  performed no testing on plaintiff.  Tr. 370.  She also discussed
4  what she saw as inconsistencies between Dr. Donnelly's opinion and
5  that of Dr. William Matthews, M.D., who had performed a VA
6  compensation examination of plaintiff in March 2000.  Tr. 261-66.
7  Finally, the ALJ stated that Dr. Donnelly's assessment was
8  inconsistent with the PCE, the opinions of non-examining, non-
9  treating Disability Determination Services (DDS) physicians, and
10 the testimony of medical expert Dr. Williams.

11     I agree with plaintiff that the ALJ erred in rejecting Dr.
12 Donnelly's assessment in her second decision.  First, in regard to
13 the erroneous reference by Dr. Donnelly to plaintiff's history of
14 surgeries, it is important to note the context and immaterialty of
15 Dr. Donnelly's remark.  In his assessment, he cites plaintiff's
16 previous MRI showing severe foraminal stenosis at L3-4, and the
17 presence of central canal stenosis at L2 and L3, as the medical
18 finding supporting particular limitations.  Tr. 232-34.

19     In the assessment's final section, the physician is asked to
20 state any other work-related activities which are affected by the
21 impairment, to explain how the activities are affected, and to
22 state the medical finding supporting the assessment.  Tr. 235.  In
23 response, Dr. Donnelly did not note any other work-related
24 activities, but simply reiterated that "[a]ll problems are related
25 to back."  Id.  He then added:  "[t]old by neurosurgery he is not
26 a candidate for surgery as has had several previous surgeries."
27 Id.

28     I agree with plaintiff that there is no basis for concluding
15 - FINDINGS & RECOMMENDATION

that any of the specific limitations assessed by Dr. Donnelly were based on the fact that plaintiff had had back surgery. Dr. Donnelly repeatedly refers to the MRI as the supporting evidence, not the back surgery history.

Dr. Donnelly's comment about the prior back surgeries is not given as a basis for his opinion and is an unresponsive comment to the questions posed. Moreover, it is undisputed that in the years following an accident while in the Army which left plaintiff with a fractured lumbar spine and pelvis, among other things, several orthopedic surgeons and a neurosurgeon considered surgery for treatment of his pain, but concluded that surgery was not in his best interest at the time. Tr. 201-02, 203-05, 206-07, 291. A different neurosurgeon recommended surgery at another time, but apparently it was not performed. Tr. 208. Thus, the record shows that plaintiff indeed is not a surgical candidate, as Dr. Donnelly stated, but not because of a history of prior back surgeries. In the end, however, there is no basis for reading Dr. Donnelly's assessment as having been based on his belief, mistaken as it was, on plaintiff's having had previous back surgeries.

Second, the ALJ erred in rejecting Dr. Donnelly's assessment as being inappropriately based on plaintiff's subjective presentation which the ALJ attributed to plaintiff's secondary gain motivation. The problem here is noted above. The secondary gain motive the ALJ refers to was articulated by Smith when she stated that because plaintiff demonstrated no motivation to improve through surgery or physical therapy, his desire for disability was attributable to secondary gain issues. Tr. 294. However, as noted above, a mere three paragraphs prior to this statement, in her

16 - FINDINGS & RECOMMENDATION

December 31, 2001 report, Smith stated that plaintiff had been unable to obtain authorization for any physical therapy and was unable to pay for such services. Id. Plaintiff's inability to afford physical therapy, and his desire to avoid surgery, are not appropriate reasons for a finding of secondary gain.

Third, while Dr. Donnelly himself may have performed no testing, it is clear that he relied on other objective test results in the record. Tr. 232-35. Moreover, as the Ninth Circuit explained in Rodriguez v. Bowen, 876 F.2d 759 (9th Cir. 1989), "[m]erely to state that a medical opinion is not supported by enough objective findings does not achieve the level of specificity our prior cases have required[.]" Id. at 762 (internal quotation omitted). An ALJ's reliance on the physician's inability to support his or her findings with objective laboratory findings does not constitute a clear and convincing reason to reject the physician's conclusions. Id. The fact that Dr. Donnelly himself did no testing, when he relied on other objective testing and his own clinical observations, is not a valid basis for rejecting his conclusions.

Dr. Matthews performed a comprehensive evaluation of plaintiff in March 2000. He noted that plaintiff, who had previously driven a truck, would probably have to change his type of work. Tr. 266. He also noted that plaintiff had applied for vocational rehabilitation, but that he was a poor candidate for heavier types of work. Id. He concluded that vocational rehabilitation was still appropriate, however, if plaintiff could get into work that is mostly sitting, with a chance to change position as needed for comfort. Id.

17 - FINDINGS & RECOMMENDATION

1    The ALJ rejected Dr. Donnelly's conclusions regarding
2  plaintiff's limitations in sitting, standing, and walking, because
3  Dr. Donnelly's assessment was based, at least in part, on Dr.
4  Matthews's March 2000 evaluation which, according to the ALJ, did
5  not ascribe such limits and went so far as to approve of vocational
6  rehabilitation.   I agree with plaintiff that Dr. Donnelly's
7  conclusions are not inconsistent with Dr. Matthews's evaluation.
8  A physician's suggestion to a patient to try vocational
9  rehabilitation is not synonymous with that physician's opinion that
10  the plaintiff may engage in certain types of activities for an
11  eight-hour day without problems.

12    Nothing in Dr. Matthews's evaluation and report indicates that
13  he opined, one way or the other, as to what particular activities
14  plaintiff could engage in, and for how long, in an eight-hour day.
15  While he suggests the type of work that plaintiff might pursue, he
16  does not indicate his belief or disbelief that plaintiff could
17  engage in that work for a continuous eight-hour work day.   Thus,
18  Dr. Donnelly's specific limitations, based on Dr. Matthews's
19  evaluation and report, are not in conflict with Dr. Matthews's
20  conclusions.   To the extent the ALJ rejected Dr. Donnelly's
21  conclusions for being inconsistent with Dr. Matthews's approval of
22  vocational rehabilitation for plaintiff, the ALJ erred.[2]  See also
23  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978) (willingness to
24  try to engage in rehabilitative activity, and a release by one's

25

26    [2]  Notably, Dr. Matthews's examination formed part of the
    record upon which the VA found plaintiff entitled to individual
27  unemployability effective April 13, 2000.  Tr. 136 (listing the
    VA examination dated March 3, 2000 as part of the evidence relied
28  upon).

18 - FINDINGS & RECOMMENDATION

doctor to engage in such an attempt, is not probative of a present ability to engage in such activity).

The ALJ also indicated that Dr. Donnelly's conclusions regarding plaintiff's abilities to sit, stand, and walk in an eight-hour work day, were inconsistent with limitations assessed during the two-hour PCE performed in May 2002. Tr. 344-49. The examination was conducted by a physical therapist and occupational therapist, neither of which is an acceptable medical source. 20 C.F.R. § 404.1513(a) (listing "acceptable medical sources"); 20 C.F.R. § 404.1513(d) (listing "other sources").

Based on the distinction between acceptable medical sources and other sources, 20 C.F.R. § 404.1527 sets forth "similar guidelines for the Commissioner to follow when weighing conflicting opinions from acceptable medical sources, while containing no specific guidelines for the weighing of opinion from other sources." Gomez v. Chater, 74 F.3d 967, 970 (9th Cir. 1996). The Commissioner thus accords opinions from "other sources" less weight than opinions from acceptable medical sources.

The ALJ's rejection of Dr. Donnelly's assessment because it conflicted with an opinion of an "other source," failed to recognize that Dr. Donnelly's opinion is entitled to greater weight. Additionally, in relying on the PCE, the ALJ failed to note that the opinions were based on only a two-hour examination, or that following the examination, plaintiff reported to his then treating physician Dr. Luther that he was "laid up" for two days because of increased back pain caused by the exertion he put forth during the examination. Tr. 429. It was error for the ALJ to reject the limitations assessed by Dr. Donnelly in favor of those

19 - FINDINGS & RECOMMENDATION

assessed by the non-medical source therapists without at least discussing the relative weight afforded to the various opinions.

Finally, the ALJ rejected Dr. Donnelly's assessments in favor of those offered by the non-examining DDS physicians and Dr. Williams.   The pertinent law provides that

> [t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. . . .  [T]he nonexamining doctor's opinion with nothing more did not constitute substantial evidence.

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citation & internal quotation omitted).

I agree with plaintiff that the fact that Dr. Donnelly's opinion conflicts with those offered by non-examining physicians, is, without more, an insufficient basis for rejecting Dr. Donnelly's opinion.  The problem, however, is that while the ALJ erred in rejecting Dr. Donnelly's assessment because it conflicted with the PCE, that does not render the PCE completely invalid. Rather, the ALJ must discuss more thoroughly if and how the PCE's limitations are credited over Dr. Donnelly's when the PCE is rendered by non-medical sources.

Without this discussion, the record does not presently establish that the opinions of the non-examining physicians are the only remaining basis offered in support of rejecting Dr. Donnelly's opinion.  If Dr. Donnelly's opinion is to be rejected on the basis of a combination of reasons, no one of which is sufficient by itself, each of those reasons will have to be supported by the record and by an appropriate analysis and discussion by the ALJ.

/ / /

1      B.   Dr. Luther

2          In   his   opening   memorandum,   plaintiff   argues   that
3    "[u]ltimately, the ALJ rejects not only Dr. Donnelly's opinion but
4    also the disability opinions of Plaintiff's other doctors, such as
5    Dr. Luther, on the basis that they also relied on the inaccurate
6    history that Plaintiff had had prior back surgeries and that the
7    comprehensive [PCE] . . . demonstrated that an eight-hour day was
8    within the claimant's functional capacity."  Ptlf's Op. Brief at
9    pp. 16-17.  The remainder of the paragraph addresses why the ALJ's
10   statement about the PCE is inaccurate.  <u>Id.</u> at p. 17.  Plaintiff
11   does not mention Dr. Luther in his response to defendant's motion
12   to remand.

13         I am unclear as to the basis of plaintiff's argument regarding
14   Dr. Luther.  Plaintiff does not, for example, cite to a particular
15   opinion or assessment by Dr. Luther that he claims was rejected and
16   set forth reasons why the ALJ improperly rejected it.  Instead,
17   plaintiff appears to mention Dr. Luther as a way of arguing that
18   the PCE should not be relied upon as a basis for rejecting either
19   Dr. Donnelly's or Dr. Luther's opinions.  Without a more specific
20   articulation of the argument, I decline to discuss any issues
21   related to Dr. Luther.  I note, however, that to the extent the
22   ALJ's rejection of any of Dr. Luther's conclusions is based upon a
23   conflict with the PCE, the same problem as noted above, exists.
24   The opinion of Dr. Luther, as a treating physician, is entitled to
25   more weight than the PCE.  Without a discussion of the relative
26   weights of the assessments by Dr. Luther and the PCE, and a careful
27   explanation of why, despite those relative weights, the ALJ adopts
28   the PCE over Dr. Luther's opinion, the contradiction in the

1  assessments alone does not provide an adequate basis for rejecting
2  Dr. Luther's opinions.
3  IV.  Incomplete Hypothetical

4      Plaintiff argues that the ALJ's hypothetical to the vocational
5  expert (VE) was incomplete and thus, the testimony provided by the
6  VE has no evidentiary value.  I agree.

7      Generally, hypothetical questions posed to the VE must set out
8  all of a claimant's impairments.  Lewis v. Apfel, 236 F.3d 503, 517
9  (9th Cir. 2001).  Before omitting any of the claimant's impairments
10  and complaints, the ALJ must make specific findings explaining his
11  or her rationale for disbelieving any of the claimant's complaints
12  or impairments not included in the hypothetical.  Light v. Social
13  Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  If the ALJ fails
14  to include all of the claimant's impairments and fails to make the
15  required specific findings justifying the omission of certain
16  impairments or complaints, the hypothetical has no evidentiary
17  value.  Lewis, 236 F.3d at 517.

18      The ALJ posed the following hypothetical to the VE during the
19  second hearing in April 2005:  an individual with a "high school
20  plus education," past work as has been performed by plaintiff, and
21  limitations as noted in the PCE.  Tr. 462-64.  The limitations set
22  forth in the PCE include a restriction on sitting up to thirty
23  minutes at one time, for a total of three to four hours in an
24  eight-hour day, a restriction on standing for up to thirty minutes
25  at one time, for total of three to four hours in an eight-hour day,
26  and a restriction on walking for up to thirty minutes at one time,
27  for a total of three hours in an eight-hour day.  Tr. 346.  The PCE
28  establishes a restriction on "SIT/STAND" for up to two hours at one

22 - FINDINGS & RECOMMENDATION

1 time, for a total of eight hours in an eight-hour day. <u>Id.</u> A

2 comment on that restriction states that it would be most productive

3 if plaintiff were able to alternate between sit, stand, and walk,

4 with brief breaks of two to five minutes each. <u>Id.</u>

5 The PCE also recommended that plaintiff would not be a

6 candidate for jobs frequently requiring materials handling and

7 positional activities. <u>Id.</u> "Positional activities" appear to

8 include activities such as kneeling, bending, crouching, crawling,

9 overhead and forward reaching. <u>Id.</u> Finally, the ALJ included

10 limitations of no extremes of cold and "the push/pull with the

11 arms[.]" Tr. 463.

12 It appears that the ALJ's hypothetical is incomplete because,

13 at a minimum, it fails to include the headaches plaintiff testified

14 about, and any limitations caused by the side-effects of

15 plaintiff's medications. <u>Varney v. Secretary</u>, 846 F.2d 581, 585

16 (9th Cir. 1988) ("the side effects of medications can have a

17 significant impact on an individual's ability to work and should

18 figure in the disability determination process"). Additionally,

19 while the PCE sets out certain limitations, it is unclear if those

20 limitations are based on all of plaintiff's impairments such as his

21 limitations in range of motion of the wrist and his cervical pain.

22 Thus, the ALJ's hypothetical did not include all of plaintiff's

23 impairments. Furthermore, because the ALJ's rationale for

24 rejecting plaintiff's testimony is not supportable, the ALJ fails

25 to articulate specific findings justifying the omission of the

26 complaints or impairments not included in the hypothetical.

27 V. VA Disability Determination

28 On October 6, 2000, the VA issued a decision on plaintiff's

23 - FINDINGS & RECOMMENDATION

service-connected compensation claim.  Tr. 133-39.  The decision provided that plaintiff was entitled to "individual unemployability" effective April 13, 2000, because, the VA determined, plaintiff was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."  Tr. 133.  The VA continued plaintiff's low back disability at 60%, his cervical spine disability at 10%, and his right forearm at 30%.  Id.

In her first decision, the ALJ refused to rely on the VA finding, stating that "'unemployability' is a term of art used by the [VA] and does not equate with [the] Social Security definition of disabled, but rather indicates only prolonged unemployment." Tr. 27.

Approximately two weeks after the ALJ's first decision, the Ninth Circuit decided McCartey v. Massanari, 298 F.3d 1072 (9th Cir. 2002).  There, the court, in a case of first impression for the circuit, addressed the evidentiary significance of a VA disability rating in a social security disability case.  Id. at 1075.  First, the court reviewed decisions from other circuits. Id.  It noted that no circuit had held that an ALJ is free to disregard a VA disability rating and that all agreed that such a rating is entitled to some evidentiary weight in a social security hearing.  Id.

Next, the court agreed with all of the other circuits that had considered the question, and held that "although a VA rating of disability does not necessarily compel the [Social Security Administration] to reach an identical result, . . . the ALJ must consider the VA's finding in reaching his decision."  Id. at 1076.

24 - FINDINGS & RECOMMENDATION

1    Finally, the court noted that in considering how much weight
2  the ALJ must give to the VA determination, it agreed with three
3  other circuits that in a social security disability case, "an ALJ
4  must ordinarily give great weight to a VA determination of
5  disability." Id. The court based its conclusion on the "marked
6  similarity between these two federal disability programs." Id. As
7  the court explained,

8         [b]oth programs serve the same governmental purpose-
         providing benefits to those unable to work because of a
9         serious disability. Both programs evaluate a claimant's
         ability to perform full-time work in the national economy
10        on a sustained and continuing basis; both focus on
         analyzing a claimant's functional limitations; and both
11        require claimants to present extensive medical
         documentation in support of their claims. . . . Both
12        programs have a detailed regulatory scheme that promotes
         a consistency in adjudication of claims. Both are
13        administered by the federal government, and they share a
         common incentive to weed out meritless claims. The VA
14        criteria for evaluating disability are very specific and
         translate easily into [the Social Security
15        Administration's] framework.

16  Id. Because, however, the criteria used by the two agencies are
17  not identical, the court concluded that "the ALJ may give less
18  weight to a VA disability rating if he gives persuasive, specific,
19  valid reasons for doing so that are supported by the record." Id.

20    In this appeal, plaintiff argues that the ALJ erred in her
21  second decision because she failed to even mention the VA rating
22  decision or its finding of unemployability. Plaintiff argues that
23  this is contrary to McCartey and provides grounds for reversal.

24    I agree with plaintiff. McCartey leaves no doubt that the ALJ
25  is required to consider and review a VA rating or disability
26  determination. The ALJ's failure to do so in the second decision
27  is inconsistent with that controlling precedent.

28    Defendant argues that the ALJ did not need to discuss the VA

25 - FINDINGS & RECOMMENDATION

determination in the second decision because she did so in the first decision. Defendant states that in the first decision, the ALJ noted the VA disability determination, discussed the evidence from the VA, and evaluated the finding of unemployability. Defendant argues that because the remand order did not include a reevaluation of the VA rating decision, this issue is not properly before this Court.

I reject defendant's argument. First, Judge King's September 7, 2004 Order reversed the ALJ's first decision. Tr. 393. More importantly, the Appeals Council's Remand Order expressly vacated that decision. Tr. 397. Because the first decision was reversed and then expressly vacated, defendant cannot rely on it here to excuse the ALJ's failure to discuss the VA disability determination in the second decision.

Second, even if it were appropriate for defendant to rely on the first decision, the ALJ's discussion of the VA determination in the first decision did not meet the requirements of McCartey. Defendant correctly states that the ALJ noted the VA determination. Tr. 27. The ALJ then proceeded to discuss how the October 6, 2000 VA's determination was inconsistent with Dr. Donnelly's September 10, 2001 functional limitations assessment because, as the ALJ explained, in her interpretation of Dr. Donnelly's report, he did not consider plaintiff's suitability for work involving frequent changes in position. Tr. 27.

As discussed in more detail below, my review of Dr. Donnelly's assessment indicates that it is ambiguous regarding his opinion on plaintiff's ability to work with a frequent position change. Thus, the ALJ was required to recontact Dr. Donnelly to resolve the

26 - FINDINGS & RECOMMENDATION

ambiguity.   20 C.F.R. § 404.1512(e).   Without clarifying his assessment, the ALJ's discussion of Dr. Donnelly's opinion has little value and is not an appropriate basis upon which to reject the VA's disability determination.

Following the discussion of Dr. Donnelly's assessment, the ALJ then suggested that the VA's disability determination was not significant because its term "unemployability" did not equate with a social security definition of disabled.  This reasoning, however, is rejected by McCartey which, as above, notes the extensive similarities between the two disability programs, and requires a more thorough discussion of the reasons for an ALJ's rejection of the VA determination.

Accordingly, not only is it inappropriate for defendant to rely on the first decision when it was reversed and vacated, the ALJ's discussion of the VA determination in the first decision is inconsistent with the requirements set forth in McCartey.

VI.  Lay Witness Testimony

In his opening memorandum, plaintiff argues that the ALJ improperly rejected the testimony of plaintiff's wife, Rachel Horn. Plaintiff does not mention this argument in his response to defendant's motion to remand.

I decline to address the argument and make a recommendation about the ALJ's disposition of the lay witness testimony.  I do not see that Mrs. Horn's testimony is substantially material to the overall disability determination because it generally is cumulative to plaintiff's testimony.

VII.  Remand for Additional Evidence or Benefits

When an ALJ improperly rejects evidence, the court should

27 - FINDINGS & RECOMMENDATION

credit such evidence and remand for an award of benefits when: "'(1) the ALJ failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" <u>Moore v. Commissioner</u>, 278 F.3d 920, 926 (9th Cir. 2002) (quoting <u>Smolen v. Commissioner</u>, 80 F.3d 1273, 1292 (9th Cir. 1996)).

Plaintiff argues that a remand for benefits is appropriate because when plaintiff's testimony and Dr. Donnelly's assessment are properly credited, there are no outstanding issues needing resolution and it is clear from the record that the ALJ would be required to find plaintiff disabled when the evidence is credited.

As discussed above, the ALJ improperly rejected Dr. Donnelly's assessment. But, as also explained above, at this point, the PCE remains as credible evidence in the record and the ALJ should be given the opportunity to discuss it after affording it its proper weight relative to the weight given to Dr. Donnelly's opinion.

More importantly, I cannot agree with plaintiff or the Appeals Council that Dr. Donnelly's September 10, 2001 assessment provides a clear basis for disability. In pertinent part, Dr. Donnelly answered "yes" to the general question of whether plaintiff's "sitting/standing/walking" were affected by any impairments. Tr. 233. After that question, the following appears:

|  | Total in 8 Hour Workday | At One Time without Interruption |
|---|---|---|
| A. Sit | 0 1 2 (3) 4 5 6 7 8 | (0) 1 2 3 4 5 6 7 8 |
| B. Stand | 0 1 (2) 3 4 5 6 7 8 | (0) 1 2 3 4 5 6 7 8 |
| C. Walk | 0 (1) 2 3 4 5 6 7 8 | (0) 1 2 3 4 5 6 7 8 |

28 - FINDINGS & RECOMMENDATION

1 Id.

2    Dr. Donnelly circled "3" in the first category (total in

3 eight-hour day), for "sit," "2" in the first category for "stand,"

4 and "1" in the first category for "walk," indicating that plaintiff

5 could sit for a total of three hours in an eight-hour workday,

6 stand for a total of two hours in an eight-hour workday, and walk

7 for a total of one hour in an eight-hour workday, adding up to a

8 total of six hours.  Id.

9    Under the second category (at one time without interruption),

10 he circled "0" for each activity of sit, stand, or walk.  Id.  The

11 meaning of this second category and its relationship to the first

12 category are unclear.  While the second category responses could

13 indicate that in Dr. Donnelly's opinion, plaintiff cannot sit for

14 one hour without interruption, cannot stand for one hour without

15 interruption, and cannot walk for one hour without interruption, it

16 is by no means clear that this was his intended assessment or th

17 only interpretation.  It is also possible that Dr. Donnelly meant

18 that plaintiff could stand, for example, for fifty-five minutes at

19 a time if he could change activities as needed.

20    Upon remand from Judge King, the Appeals Council discussed the

21 ALJ's rejection of Dr. Donnelly's assessment in her first decision.

22 Tr. 397.  The Appeals Council explained that

23        [t]he decision rejects the opinion of treating physician,
         David Donnelly, M.D., who indicated that the claimant
24       would be capable of standing, walking and sitting for a
         total of only six hours in a  workday.  The decision
25       states that Dr. Donnelly failed to consider a sit/stand
         option, but provides no rationale for this assumption.
26       In fact, as Dr. Donnelly indicated that the claimant
         would not be able to sit for one hour, stand for one
27       hour, or walk for one hour without interruption, it
         appears that he considered that the claimant would be
28       changing position.

29 - FINDINGS & RECOMMENDATION

1  Id.

2      The problem with the Appeals Council's decision is that Dr.

3  Donnelly's assessment does _not_ conclusively indicate that plaintiff

4  would be unable to sit for one hour, stand for one hour, or walk

5  for one hour without interruption.  And, even if his assessment did

6  establish such limits, these limits do not make it appear that he

7  considered a change in position.  There is nothing about Dr.

8  Donnelly's responses to the inquiries about the total number of

9  hours in an eight-hour day or the number of hours at one time

10  without interruption, that suggests that he opined, one way or the

11  other, about plaintiff's abilities to engage in these activities if

12  given the option to change them during an eight-hour day.  The

13  doctor may have answered each question in isolation, without

14  consideration of the other  activities, or alternating among them.

15  Answers on a printed form in the nature of circles, instead of

16  descriptive sentences, are easily misunderstood, especially when

17  unaccompanied by testimony.

18      In such a case, where the record is ambiguous, it is incumbent

19  on the ALJ to pursue the source of the opinion and obtain

20  clarification about the assessment.  20 C.F.R. § 404.1512(e).  The

21  ALJ must do that in this case.  Because Dr. Donnelly's assessment

22  remains an outstanding issue and cannot provide a determination of

23  disability, remand for additional evidence rather than an award of

24  benefits, is appropriate.

25      Additionally, while I recognize that Ninth Circuit authority

26  allows me to remand for benefits upon crediting improperly rejected

27  claimant testimony, Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir.

28  2004), it is not appropriate in this case.  While several of the

reasons cited by the ALJ in support of her negative credibility determination are not supported by the record, the issue regarding the statement in the PCE that plaintiff's perception did not match his performance during that evaluation, remains. As noted above, the error was the ALJ's failure to explain why that evidence suggests secondary gain or some other legitimate basis for rejecting plaintiff's testimony rather than assuming, without discussion, that it proved secondary gain. The ALJ should have the opportunity to revisit that issue.

Because this case has been before the ALJ twice previously, I recommend that should the Article III District Court Judge adopt this Findings & Recommendation, the ALJ be ordered to do the following on remand: (1) obtain additional VE testimony and properly resolve any conflicts between the VE's occupational evidence and information in the DOT and the Selected Characteristics of Occupations (Social Security Ruling 00-4p); (2) thoroughly discuss each of plaintiff's impairments at step two; (3) contact Dr. Donnelly and ascertain if his response to Question II in his September 10, 2001 assessment meant that plaintiff cannot work more than six total hours in an eight-hour workday even when changing positions as often as needed among sitting, standing, and walking; (4) pose a complete hypothetical to the VE which incorporates all of plaintiff's limitations and provide specific findings explaining her rationale for rejecting any complaints or impairments omitted from the hypothetical; (5) in any discussion referring to the PCE, give appropriate weight to the PCE; and (6) give appropriate weight to the VA disability determination consistent with McCartey.

31 - FINDINGS & RECOMMENDATION

1    I note that because the burden of proof is on the Commissioner
2    at step five of the sequential analysis, should the ALJ conclude
3    that plaintiff is able to perform other work in the national
4    economy and should she again commit error in her decision,
5    plaintiff should be awarded benefits. See Moisa, 367 F.3d at 887
6    (suggesting that the Commissioner should not be given multiple
7    opportunities to show the claimant is not credible).

8                              CONCLUSION

9        Defendant's motion for remand (#14) should be granted. I
10   recommend that the ALJ's decision be reversed and remanded for
11   additional evidence. Should the Article III District Court Judge
12   adopt this Findings & Recommendation, I further recommend that a
13   Judgment reversing and remanding the case for additional evidence,
14   be entered.

15                          SCHEDULING ORDER

16       The above Findings and Recommendation will be referred to a
17   United States District Judge for review. Objections, if any, are
18   due March 6, 2007. If no objections are filed, review of the
19   Findings and Recommendation will go under advisement on that date.

20       If objections are filed, a response to the objections is due
21   March 20, 2007, and the review of the Findings and Recommendation
22   will go under advisement on that date.

23       IT IS SO ORDERED.

24                   Dated this   16th   day of February    , 2007.

25

26

27                       /s/ Dennis James Hubel
     _____   Dennis James Hubel
28                                     United States Magistrate Judge

32 - FINDINGS & RECOMMENDATION